# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHERRI LAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 16-cv-075-JPG-CJP |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant.[1] | ) |
| | ) |

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Sherri Lay seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in November, 2012, alleging disability beginning January 31, 2008. (Tr. 15). After holding an evidentiary hearing, Administrative Law Judge (ALJ) Michael Scurry denied the application in a written decision dated July 21, 2014. (Tr. 15-24). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. See, *Casey v. Berryhill*, __ F3d. __, 2017 WL 398309 (7th Cir. Jan. 30, 2017). She is automatically substituted as defendant in this case. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

1

1. The ALJ misconstrued the restrictions from treating neurosurgeon, Dr. David Kennedy.

2. The ALJ failed to properly evaluate plaintiff's symptoms pursuant to 20 C.F.R. § 404.1529.

## **Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. §§ 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in

past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that

the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Ms. Lay was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).

The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

ALJ Scurry followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date and that she was insured for DIB through December 31, 2008. He found that plaintiff had severe impairments of degenerative joint disease, status-post shoulder repair surgery, and degenerative disc disease of the cervical spine with cervical disc herniation. He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that Ms. Lay had the residual functional capacity (RFC) to perform work at the sedentary level, "except she can frequently lift overhead up to three pounds." (Tr. 18). Based on the medical records, the ALJ also found the weight of the evidence did not support plaintiff's alleged inability to perform any work prior to her date last insured in December, 2008. Although the ALJ found plaintiff was unable to perform any past relevant work, she was not disabled because she was able to do other jobs which existed in significant numbers in the local and national economies.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period.

1. **Agency Forms**

Plaintiff was born in 1963 and was 44 years old on the alleged onset date of January 31, 2008. (Tr. 150). She was insured for DIB through December 31, 2008. *Id.*

In her initial Disability Report, plaintiff said she was unable to work due to neck, back, and shoulder problems, as well as depression, anxiety, coronary artery disease, radiculopathic type pain in upper extremities, and headaches. (Tr. 153). She was 5'5" tall and weighed 150 pounds. *Id.* Plaintiff graduated from the 12th grade and did not attend any specialized job training or trade or vocational school. (Tr. 154).

Plaintiff submitted various other Function and Disability Reports, which were all generated in 2013. Because these reports postdate the date last insured by over 4 years, they provide little insight into plaintiff's disabilities in 2008.

Plaintiff previously worked as a packager at a fiberglass manufacturer, as a finisher at a plastics manufacturer, and in housekeeping and elder care. (Tr. 155).

2.  **Evidentiary Hearing**

Ms. Lay was represented by an attorney at the evidentiary hearing on June 24, 2014. (Tr. 31).

Plaintiff testified she last worked in December of 2008 as a packer at Swann Corporation. (Tr. 38). Plaintiff underwent multiple surgeries on her shoulder and neck in 2008, and was unable to perform her job duties, such as lifting kitchen sinks, thereafter. (Tr. 39-40). Swann offered plaintiff her job back after she was released by Dr. Kennedy in 2012. (Tr. 39). However, she was unable to tolerate even light duty work at Swann. *Id.* Prior to working at Swann, plaintiff worked at a plastics factory and a fiberglass factory, and also cleaned homes and cared for an elderly woman. (Tr. 42-4).

Plaintiff testified that pain and headaches prevented her from being able to work. (Tr. 45). She was under Dr. Kennedy's care for approximately 4 years. (Tr. 48). Plaintiff's attorney asked, "did [Dr. Kennedy] say no work or did he take you off work the first time you saw him or when did that come about?" Plaintiff replied, "Yes. He took me off work, because he said that . . . the disks were herniated . . .". (Tr. 48). Dr. Kennedy released plaintiff in 2012 with no additional instructions. (Tr. 49).

A vocational expert, Dr. Sprong, also testified at the hearing as an impartial witness. *Id.* Dr. Sprong is familiar with Social Security's definitions of unskilled, semiskilled, skilled, sedentary, light, medium, heavy, and very heavy work. (Tr. 49-50). He opined that an individual of plaintiff's age, education, and work experience, who was able to perform sedentary work

limited to lifting overhead up to three pounds, would be unable to perform her past work. (Tr. 52). Dr. Sprong testified such an individual could, however, work in other jobs that existed in the national or regional economies. (Tr. 52). Such jobs included, for example, a final assembler (nationally 40,000; State of Illinois 2,200), a call operator (nationally 16,500; State of Illinois 640), and a hand bander (nationally 20,600; State of Illinois 1,300). (Tr. 52-3). If this same individual also required unscheduled breaks and unpredictable absences, he or she would be unable to perform any jobs that existed in the national or regional economy. (Tr. 53).

### 3. Medical Treatment

On January 25, 2008, plaintiff presented to Southern Illinois Healthcare Foundation with complaints of left shoulder and neck pain. (Tr. 601). The nurse ordered a Magnetic Resonance Imaging (MRI) of her left shoulder. *Id.* On February 8, 2008, an MRI of plaintiff's left shoulder showed findings of a full-thickness rotator cuff tear with slight retraction of the supraspinatus muscle and/or some early atrophic change in the supraspinatus muscle. (Tr. 649). It also showed moderate arthritis at the AC joint with spurring from the inferior margin and a small subcortical cyst at the anterolateral aspect of the humeral head-neck junction. *Id.* An MRI of her cervical spine from that same day showed degenerative changes most prominent at C6-7 where there is left lateral disc herniation. (Tr. 650).

On March 3, 2008, plaintiff presented to Dr. Ahn, who diagnosed her with a left shoulder rotator cuff tear. (Tr. 681). He noted plaintiff had tenderness in the greater tuberosity area, and severe difficulty in range of motion beyond a 90-degree arc, as well as severe pain with resisted abduction and positive impingement sign. *Id.* Dr. Ahn placed plaintiff on permanent restriction of the right arm and ordered no use of the left arm. (Tr. 691).

7

On April 24, 2008, plaintiff presented to Dr. Kennedy with left arm pain, consistent with cervical radiculopathy. (Tr. 461). The range of motion of her shoulder was significantly reduced but her motor and sensory examination were grossly normal. *Id.* On April 8, 2008, Dr. Kennedy examined plaintiff and diagnosed her with cervical radiculopathy with documented cervical disc herniation at C6-7 and a left shoulder injury. (Tr. 465). He listed her work status as "Off work," deferred shoulder treatment to Dr. Ahn, and gave "him" Vicodin for pain. *Id.* On April 29, 2008, plaintiff exhibited good general health during a pre-operative physical exam for her left rotator cuff repair. (Tr. 598).

On May 8, 2008, Dr. Ahn performed left shoulder surgery on plaintiff. (Tr. 688). On May 12, 2008, plaintiff attended a follow up evaluation with Dr. Ahn and he noted she was doing well without complaints. (Tr. 680). He also kept her off work. *Id.*

On May 29, 2008, Dr. Kennedy reported plaintiff had symptoms compatible with radiculopathy. (Tr. 458).

On June 9, 2008, Dr. Ahn reported plaintiff was doing well without any complaints, placed plaintiff on light duty with absolutely no use of her left arm, and refilled plaintiff's Vicodin prescription. (Tr. 679). On June 30, 2008, Dr. Ahn reported plaintiff needed pain medication to go to sleep and also placed her on light duty restrictions with no overhead activity and dexterity activity only, and no pull/push or lifting. (Tr. 677).

On July 10, 2008, Dr. David Kennedy reported that plaintiff was experiencing "quite a bit of pain radiating down the arm" and opined she would need cervical microdiscectomy with fusion and plating. (Tr. 455). Her range of motion of the cervical spine was reduced and her motor and sensory examinations were grossly normal. *Id.* He prescribed her Vicodin and

instructed her to remain off work. *Id*

On July 14, 2008, plaintiff attended physical therapy where she complained of throbbing pain at 7/10 from her upper back and collar bone up to her neck and down to her left arm. (Tr. 662). She stated the pain increased with some extremity activity like lifting her arm, even without weight. *Id.* She continued with physical therapy sessions through September 18, 2008. (Tr. 673).

On August 25, 2008, Dr. Ahn imposed light duty work restrictions with no overhead activity and a 10-pound lifting instruction. (Tr. 678). On September 22, 2008, he noted plaintiff's range of motion was full, impingement sign was negative, that resisted abduction did not cause any tenderness, and that her strength was 5/5. (Tr. 676). Dr. Ahn permitted plaintiff to resume full activities as tolerated. *Id.*

On September 25, 2008, Dr. Kennedy stated plaintiff had some pain in the base of the cervical spine with radiating pain into her left arm, while her motor and sensory examinations were grossly normal. (Tr. 452). He recommended she undergo a cervical myelogram and opined that plaintiff "should remain off work in the interim." *Id.* On September 30, 2008, plaintiff underwent a myocardial radionuclide imaging, perfusion, tomography (SPECT). (Tr. 286). The study found normal rest and exercise myocardial perfusion images and a normal left ventricular size and systolic function. *Id.* During a treadmill nuclear stress test, also conducted on September 30, 2008, plaintiff demonstrated excellent exercise performance, no chest pain with exercise, and negative ECG evidence of ischemia. (Tr. 288).

## Analysis

Ms. Lay first argues that the ALJ misconstrued Dr. David Kennedy's instruction for plaintiff to remain off work.

The ALJ's decision will be upheld as long as it is supported by "substantial evidence," *see* 42 U.S.C. § 405(g), such that a reasonable mind could accept the conclusion based on the relevant evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

On April 8, 2008, Dr. Kennedy noted on plaintiff's records, "WORK STATUS: Off work". (Tr. 465). The ALJ used this as evidence that plaintiff could not perform her medium exertion job at the time. (Tr. 20). Plaintiff contends this was an "obvious error" because "Dr. Kennedy was merely acknowledging that the claimant was not working at that time." Plaintiff is suggesting the ALJ relied on Dr. Kennedy's April 8th notation to prove that she could perform sedentary work. However, the ALJ cited medical opinions from Dr. Ahn regarding plaintiff's lifting abilities, as well as other records indicating plaintiff's condition was improving, to show she could perform sedentary work. (Tr. 20). The ALJ cited Dr. Kennedy's opinion only to show plaintiff could not perform medium exertion work. *Id.* If anything, the ALJ's interpretation was more favorable to plaintiff than her own – the ALJ used the notation to show plaintiff was physically unable to perform her work, while Plaintiff insists it meant she was just "not working at that time".

Subsequently, on September 25, 2008, Dr. Kennedy opined that plaintiff "should remain off work in the interim." (Tr. 452). The ALJ found this restriction referenced medium exertional level work only, and not *all* work.

Ms. Lay asserts that the record clearly shows, at a minimum, she was completely disabled up until October of 2012, and that "[n]othing in the record supports the ALJ's conclusion that 'no work' meant 'no medium work.'"

The ALJ reasoned that "work" referred only to medium work because plaintiff was working at a medium exertional level while under Dr. Kennedy's care and "Dr. Kennedy did not provide any other function limitations to preclude all work." (Tr. 21). Contrary to Ms. Lay's arguments, this is a reasonable interpretation and, even assuming the ALJ did misconstrue Dr. Kennedy's instruction, it would not constitute reversible error. The ALJ's determination that plaintiff could perform sedentary work was supported by other substantial medical evidence in the record. For instance, the ALJ considered that plaintiff had "excellent exercise performance on a September 30, 2008 Treadmill Nuclear Test" and that Dr. Ahn reported plaintiff had full strength in her shoulder and could resume full activities in September of 2008. (Tr. 21). He also gave weight to Dr. Ahn's lifting restrictions that comported with the performance of sedentary work, as well as the lack of neurological findings supporting an inability to perform such work. (Tr. 20).

Plaintiff also points out that in 2013, Dr. Kennedy opined she reached medical maximum improvement and could not perform sedentary work as of October 18, 2012. Dr. Kennedy completed a form on which he assessed plaintiff's limitations in April, 2013. (Tr. 551-553). On the last page of the form, Dr. Kennedy indicated plaintiff's limitations, set forth in his report, commenced on October 18, 2012. (Tr. 553). Plaintiff is asserting the ALJ should have assumed these restrictions were in effect during 2008. However, there is no reason for the ALJ to have made that assumption because when Dr. Kennedy prepared his report in 2013, if he believed

11

plaintiff's restrictions were in effect in 2008, he could have said so.

Finally, the ALJ's acknowledgement that plaintiff underwent aggressive treatment in 2008 is not a tacit admission that "[her] condition was worse prior to being released from Dr. Kennedy at maximum medical improvement," as plaintiff suggests. The ALJ recognized plaintiff's aggressive treatment because he was weighing the evidence related to plaintiff's functional capacity – a task reserved to the ALJ and not this Court. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). For the foregoing reasons, the ALJ's finding will not be disturbed on the grounds that the ALJ misconstrued Dr. Kennedy's findings.

Ms. Lay next argues that the ALJ failed to properly evaluate her symptoms pursuant to 20 C.F.R. § 404.1529 by not considering her pain medications and their side effects. Although the ALJ did not specifically address the side effect of plaintiff's Vicodin use, he did make a general credibility finding that "the claimant's statements concerning the intensity, persistence and limiting effects of [the symptoms she alleged] are not entirely credible . . .". (Tr. 19). The Court must use an "extremely deferential" standard in reviewing an ALJ's credibility finding. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013).

Additionally, plaintiff states she began taking Vicodin in 2008, switched to Norco in 2009 (after her date last insured), and then complained the Norco made her drowsy in a 2013 report. Because plaintiff did not begin taking Norco until 2009, and there is no indication in the record that Claimant experienced drowsiness from Vicodin during the relevant period, the ALJ's failure to consider the side effects of Norco is harmless error.

12

**Conclusion**

The Commissioner's final decision denying Sherri Lay application for social security disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE:** 5/24/2017

*s/J. Phil Gilbert*
**J. PHIL GILBERT**
**U.S. DISTRICT JUDGE**